UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CLASSIC TOUCH DÉCOR, INC.,

                              Plaintiff,

          -against-

MICHAEL ARAM, INC.,

                            Defendant.

**MEMORANDUM & ORDER**

**15-CV-453 (NGG) (RLM)**

-----------------------------------------------------------------------X
MICHAEL ARAM, INC.,

                        Counterclaim Plaintiff,

          -against-

CLASSIC TOUCH DÉCOR, INC.,
BED BATH & BEYOND INC., and ROES 2
through 10,

                        Counterclaim Defendants.
-----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

       Counterclaim Plaintiff Michael Aram, Inc. ("Michael Aram") brings this action against

Counterclaim Defendants Classic Touch Décor, Inc. ("Classic Touch") and Bed Bath & Beyond,

Inc. for copyright infringement, trade dress infringement, false designation of origin, dilution,

and unfair competition.  Classic Touch has moved to dismiss Michael Aram's trade dress

infringement claim pursuant to Federal Rule of Civil Procedure 12(c).  (Not. of Mot. to Dismiss

(Dkt. 38).)  For the reasons discussed below, Classic Touch's motion to dismiss the trade dress

infringement claim is GRANTED WITHOUT PREJUDICE, and Michael Aram's request for

leave to amend the claim is GRANTED.

# I.       FACTUAL ALLEGATIONS

The following facts are taken from the Amended Counterclaim and are assumed to be true for the purposes of Classic Touch's motion to dismiss.

Michael Aram designs, manufactures, and sells products ranging from tableware to furniture that have been featured in galleries and stores worldwide.  (Am. Countercl. (Dkt. 22) ¶ 14.)  Michael Aram's tableware pieces, specifically its signature Orchid Collections, are the products at issue in this case.  (Id. ¶ 22.)

Michael Aram claims trade dress protection in its Orchid Collections, and it describes the features it seeks to protect in the following formulation:

> [T]he combination of one or more of the following elements: thin, and sometimes hammered, nickelplate material (or in some instances, depending on the item type, another material such as polished black granite) featuring one or more thick, branch-like, winding or meandering and sometimes angular or interwoven, flower stems (either silver or black) adorned by one or more fully bloomed flowers or orchids (either silver, black, or gold) spaced out along the stem, each with five rounded, textured, semi-overlapping petals, with several smaller buds also spaced out along the stem(s).

(Id. ¶ 24.)  In the Amended Counterclaim, Michael Aram also includes color photographs of "[r]epresentative samples of several products from the Orchid collection."  (Id. ¶ 23.)  "In the mind of the consumer, Michael Aram is associated with the Orchid collection's [] traits and characteristics, which are famous and distinctive, not functional."  (Id. ¶ 25.)

Michael Aram's tableware pieces have received significant exposure in the marketplace due to its advertising and promotional efforts, which total $3 million annually. (Id. ¶ 16.) Michael Aram products can be found at Neiman Marcus, Bloomingdale's, Saks Fifth Avenue, and Nordstrom.  (Id. ¶ 16.)  They have also been featured in a number of magazines and newspapers, including Elle Décor, The New York Times, The New York Post, Architectural

Digest, The Wall Street Journal, and USA Today.  (Id.)  Mr. Michael Aram, the individual and creative force behind the company's products, has also received awards for his designs; Elle Décor declared him Indian Designer of the Year three times, and the Museum of Art and Design presented him with the 2014 MAD Visionaries! Award.  (Id. ¶ 17.)

Michael Aram alleges that Classic Touch copied its trade dress by imitating major design elements and the overall "look and feel" of its tableware.  (Id. ¶ 42.)  It alleges that Classic Touch manufactured, marketed, and sold copies of its designs in an attempt to capitalize on the popularity of those designs.  (Id. ¶ 27.)  While the companies' products appear superficially similar, Michael Aram alleges that Classic Touch's products are of inferior quality and were created to confuse consumers into believing that the infringing products are affiliated with Michael Aram in order to profit from its established reputation and goodwill.  (Id. ¶¶ 29-30.) Michael Aram claims that Classic Touch's copying of its distinctive design elements constitutes a false designation of origin and has caused or is likely to cause confusion, mistake, and deception in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  (Id. ¶ 43.)

## II.     PROCEDURAL HISTORY

Classic Touch initiated a declaratory judgment action against Michael Aram on January 29, 2015.  (Compl. (Dkt. 1) at 1.)  On January 31, 2015, Michael Aram filed its Answer and Counterclaim against Classic Touch for copyright infringement, trade dress infringement, false designation of origin, dilution, and unfair competition.  (Answer & Countercl. (Dkt. 6).) On May 15, 2015, Michael Aram amended its Counterclaim and impleaded Defendant Bed Bath & Beyond to the suit.  (Am. Countercl.)  On June 24, 2015, Classic Touch filed its Answer to Michael Aram's Amended Counterclaim.  (Answer to Am. Countercl. (Dkt. 31).)

With leave of court (see June 25, 2015, Min. Entry), Classic Touch filed a partial motion to dismiss, seeking to dismiss only Michael Aram's counterclaim of trade dress infringement, pursuant to Federal Rule of Civil Procedure 12(c).  (Not. of Mot. to Dismiss; Mem. of Law in Supp. of Mot. to Dismiss ("Classic Touch Mem.") (Dkt. 39).)  Michael Aram has opposed, arguing that the trade dress infringement claim is adequately alleged, or, in the alternative, seeks leave to amend the claim.  (Opp'n to Mot. to Dismiss ("Michael Aram Mem.") (Dkt. 41).)  In its reply, Classic Touch presses its arguments for dismissal, and further argues that leave to amend should be denied.  (Reply Mem. of Law in Supp. of Mot. to Dismiss ("Classic Touch Reply") (Dkt. 43).)

## III.    LEGAL STANDARDS

### A.    Rule 12(c) Motion for Judgment on the Pleadings

In deciding a Rule 12(c) motion for judgment on the pleadings, the court employs "'the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the [nonmovant's pleading] as true and drawing all reasonable inferences in favor of the nonmoving party.'"  Byrd v. City of New York, No. 04-1396-CV, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) (summary order) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)).  In other words, "[t]o survive a Rule 12(c) motion, [the nonmovant's pleading] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotation marks and citation omitted).  Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." Id. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S at 555).

As with a Rule 12(b)(6) motion to dismiss for failure to state a claim, in deciding a Rule 12(c) motion, a court is limited to considering the facts alleged in the pleading, as well as documents that are attached to or incorporated by reference in the operative pleading, and documents not incorporated in, but integral to, the pleading.[1] See Daniels ex rel. Daniels v. Comm'r of Soc. Sec., 456 F. App'x 40, 41 (2d Cir. 2012) (summary order) (citing Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993)).

### B.      Trade Dress Infringement

Section 43(a) of the Lanham Act provides a cause of action against any person who "in connection with any goods . . . or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person . . . ." 15 U.S.C. § 1125(a)(1)(a). "The statutory protection of unregistered trademarks extends to trade dress." Fun–Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 999 (2d Cir. 1997). Trade dress is "a category that originally included only the packaging, or 'dressing,' of a product, but in recent years has been expanded by many Courts

---

[1]  Michael Aram makes several factual assertions in its Memorandum of Law, and even references "the evidence gathered to date." (See, e.g., Michael Aram Mem. at 6 & nn.2-3.)  The court has not considered these assertions and factual materials in deciding whether the trade dress infringement claim is adequately alleged or whether Michael Aram should be granted leave to amend.

of Appeals to encompass the design of a product." <u>Wal-Mart Stores, Inc. v. Samara Bros., Inc.</u>, 529 U.S. 205, 209 (2000).

A plaintiff asserting a trade dress infringement claim in the Second Circuit must: "(1) offer a precise expression of the character and scope of the claimed trade dress; (2) allege that the claimed trade dress is non-functional; (3) allege that the claimed trade dress has secondary meaning; and (4) allege that there is a likelihood of confusion between the plaintiff's good and the defendant's." <u>R.F.M.A.S., Inc. v. Mimi So</u>, 619 F. Supp. 2d 39, 75 (S.D.N.Y. 2009) (quoting <u>Sherwood 48 Assocs. v. Sony Corp. of Am.</u>, 76 F. App'x. 389, 391 (2d Cir. 2003) (summary order)). To establish trade dress protection for a product line, the plaintiff must "establish[] that the 'overall look' in each separate product is 'consistent.' However, courts will scrutinize a claim that purports to cover a line of products with particular intensity." <u>Id.</u> (quoting <u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 116 (2d Cir. 2001)).

## IV.    DISCUSSION

The parties offer fundamentally diverging views concerning (1) the lawful scope of trade dress protection over a line or collection of products; (2) whether, assuming the design of Michael Aram's products are protectable, Michael Aram has adequately articulated the trade dress it seeks to protect; and (3) the propriety of dismissing a trade dress infringement claim at the pleading stage. Indeed, what Michael Aram characterizes as "a straightforward trade dress case arising out of Classic Touch's deliberate copying of one of Michael Aram's most successful lines of high-end tableware products" (Michael Aram Mem. at 1), Classic Touch characterizes as an improper attempt by Michael Aram to monopolize, through trade dress protection, "any houseware product or serving piece that is adorned with flowers" (Classic Touch Mem. at 20).

At this relatively early stage of the litigation, the court concludes that Michael Aram likely can adequately allege a collection of tableware pieces featuring elements that may be protectable as trade dress, but has failed to offer a precise expression of the character and scope of the claimed trade dress in the Amended Counterclaim. Accordingly, the court dismisses without prejudice Michael Aram's trade dress infringement claim, but amends the operative Scheduling Order to allow Michael Aram an opportunity to try again in a Second Amended Counterclaim.

## A.     Articulation of the Claimed Trade Dress

Michael Aram seeks to protect the trade dress of certain pieces within its Orchid Collections. In order to protect the trade dress of those pieces, Michael Aram must provide an articulation of the elements that compose the trade dress it seeks to protect. R.F.M.A.S., 619 F. Supp. 2d at 75-76. While the articulation must be "a precise expression of the character and scope of the claimed trade dress," the Second Circuit has acknowledged that decorative or artistic works "may be harder to capture in words, and may need descriptions more broadly framed, or may need drawings" to properly highlight the elements and features that make up the claimed trade dress. Yurman Design, 262 F.3d at 117. In such cases, the plaintiff may "rely more heavily on pictures of the trade dress or on broader descriptions, as long as the plaintiff ultimately points to the distinctive elements." R.F.M.A.S., 619 F. Supp. 2d at 78 (citing Yurman Design, 262 F.3d at 117). Regardless of whether the plaintiff utilizes a textual description or a graphic representation, he must give the defendant and factfinder adequate notice of the trade dress claimed. Id. at 79; see also Yurman Design, 262 F.3d at 117 (describing purposes of articulation requirement, including avoiding inconsistent findings by a jury, "winnowing out" claims that are overbroad (i.e., generic), and allowing a court to impose a properly tailored

remedy); <u>Coach, Inc. v. We Care Trading Co.</u> ("<u>Coach II</u>"), 67 F. App'x 626, 629 (2d Cir. 2002)

(summary order) (upholding jury verdict of trade dress infringement and explaining that the

court's jury charge "based on Coach's description was sufficiently specific to require the jurors

to focus on a common set of features").

Considering the description of the tableware pieces in the Amended Counterclaim,

including the photographs, and the widespread recognition in the media and the various awards

received for its designs, Michael Aram's tableware pieces appear to be artistic in nature.

(<u>See</u> Am. Countercl. ¶¶ 14-17.)  Because these designs are decorative and may be difficult to

describe textually, Michael Aram can rely on photographs in part to properly articulate the scope

of the claimed trade dress.  <u>See</u> <u>Yurman Design</u>, 262 F.3d at 117.  Regardless of the use of

photographs, however, Michael Aram must provide proper notice of the trade dress claimed.  <u>Id.</u>

at 116.  As currently expressed in the Amended Counterclaim, Michael Aram's articulation is too

broad to give Classic Touch and the court proper notice of the scope of the trade dress claimed,

and due to the breadth and vagueness of the articulation, would create unnecessary complications

were the claim to proceed as pleaded.

In the Amended Counterclaim, Michael Aram provides both a textual description and a

graphic representation of the claimed trade dress.  As pleaded, the textual description is

problematic in a number of ways.  Michael Aram claims a "combination of one or more of the

following elements" and lists "thin, and sometimes hammered nickelplate material (or in some

instances, depending on the item type, another material such as polished black granite)" as the

"first" element.  (Am. Countercl. ¶ 24.)  First, Michael Aram cannot claim trade dress protection

so broad that it would include any tableware item made of hammered nickelplate or polished

black granite.  As stated, it appears that any good made of either of the two materials could be

infringing on the claimed trade dress, making the articulation far too broad.  See Maharishi

Hardy Blechman Ltd. v. Abercrombie & Fitch Co., 292 F. Supp. 2d 535, 544-46

(S.D.N.Y. 2003) (concluding that an articulation that states "alone or in combination" is too

broad, making it difficult for a juror or court to "know exactly which particular combination of

numerous elements claimed would trigger trade dress protection").  Second, Michael Aram

cannot claim trade dress protection for an element that appears "sometimes" or only "in some

instances," because it renders the presence of the element meaningless.  See id. at 546 ("The

ninth 'element' of the asserted trade dress is: 'Sometimes Asian-themed embroidery on the rear

side of the pant leg.'  This formulation is immediately problematic because as a matter of logic,

every conceivable pair of pants either has, or does not have, Asian-themed embroidery.  In other

words, the addition of the 'and/or' element of 'sometimes' Asian embroidery adds nothing

whatsoever to the asserted trade dress." (emphasis in original) (internal citation omitted)).  This

is not to say that Michael Aram cannot claim trade dress protection over a good made of

nickelplate (or a good made of polished black granite) that also features three-dimensional

orchids—the artistic, source-identifying trade dress that it appears Michael Aram seeks to

protect.  If Michael Aram intends only to claim trade dress protection over the three-dimensional,

decorative flowers (see, e.g., Michael Aram. Mem. at 16 ("The artistic and distinctive

components of the items—that is, the portions that make Michael Aram products identifiable to

consumers as 'a Michael Aram'—are the 3-dimensional flower artwork, which is uniform across

the entire collection." (emphases in original)), then that should be clearly stated in the operative

pleading's articulation of the trade dress claimed.  See also infra Part V.

Classic Touch also cites other phrases contained in the textual description of the orchids

and stems that it believes to be imprecise: for example, "winding or meandering," "angular or

interwoven," "fully bloomed flowers or orchids," and "silver, black, or gold." (Classic Touch

Mem. at 15.) As discussed above, goods that are artistic in nature can be difficult to describe

textually and may require broader descriptions or graphic representations. Yurman Design, 262

F.3d at 117. Michael Aram's attempt to describe the three-dimensional flowers and stems is

sufficient when read in conjunction with the photographs provided.[2] While the language alone

does not specify whether the protected flowers are two-dimensional or three-dimensional, the

photographic images included in the Amended Counterclaim only show three-dimensional

flowers.[3] (Am. Countercl. at ¶ 23.)

There is some dispute regarding the effect and meaning of the trade dress description

offered in Michael Aram's responses to Classic Touch's interrogatories. (See Michael Aram's

Resps. to Classic Touch's 1st Set of Interrogs. ("Response to Interrogatory") (Decl. of Steven

Stern in Supp. of Classic Touch's Mot. to Dismiss (Dkt. 40), Ex. F (Dkt. 40-6)).) Michael Aram

argues (without citation to any controlling legal authority) that "most would agree that the

narrower description set forth in a more recent, verified discovery response would control over

_____

[2] Even if Michael Aram intended to rely exclusively on the photographs included in the Amended Counterclaim, the articulation would not be sufficient, as it still must "ultimately point[] to the distinctive elements." R.F.M.A.S., 619 F. Supp. 2d at 78 (citing Yurman Design, 262 F.3d at 117). The photographs alone give no indication of the specific elements Michael Aram apparently intends to protect. (See Am. Countercl. ¶ 23.) It appears that they must be viewed in conjunction with Michael Aram's textual description, as the text points to the flowers and the material used as distinctive elements in its product line. (Id. at ¶ 24.) However, as discussed above, the textual description is ambiguous as to the scope of the trade dress Michael Aram seeks to protect, particularly with regard to the material used.

On the other hand, the court rejects Classic Touch's argument that "even partial reliance upon photographic images to support a trade dress claim is not appropriate in a case such as this." (Classic Touch Mem. at 19.) The Second Circuit has made clear that "[t]he trade dress of works that are decorative or artistic may be harder to capture in words, and may need descriptions more broadly framed, or may need drawings." Yurman Design, 262 F.3d at 117. The three-dimensional orchids that Michael Aram seeks to protect are certainly decorative and artistic; the fact that Yurman Design involved jewelry does not preclude the use of photographs (along with a textual description) in this action. See also R.F.M.A.S., 619 F. Supp. 2d at 79 (denying motion for summary judgment and noting that "RFMAS's articulation of its trade dress places Defendants on fair notice of the supposedly distinctive elements of RFMAS's alleged trade dress, when coupled with the pictures of the items that represent the product line").

[3] See also Michael Aram Mem. at 15 ("All the items included in Michael Aram's trade dress claim feature 3-dimensional artwork consisting of at least one branch-like, curving flower stem adorned by at least one flower in bloom with rounded, semi-overlapping petals, and multiple closed buds attached to the stem or stems.").

an unverified, earlier allegation." (Michael Aram Mem. at 17.) However, it is not clear to the court whether, in determining the adequacy of the allegations in the operative pleading, it should consider these discovery-related materials. Compare, e.g., Maharishi Hardy Blechman, 292 F. Supp. 2d at 543-46 (discussing when in a litigation the party must adequately articulate the trade dress it seeks to protect, and questioning the propriety of the plaintiff attempting to remedy an overbroad articulation in the complaint by revising the articulation in its opposition to the defendant's motion for summary judgment), with Coach, Inc. v. We Care Trading Co., No. 99-CV-11672 (DLC), 2001 WL 812126, at *5 (S.D.N.Y. July 18, 2001) (explaining in post-trial decision that the plaintiff "clearly identified the four elements of its trade dress at the final pretrial conference" and that the defendant failed to move to dismiss or for summary judgment based on the allegedly overbroad articulation contained in the complaint), aff'd in part and vacated in part, Coach II, 67 F. App'x at 628-29 (holding that the court's charge to the jury describing the plaintiff's claimed trade dress was sufficiently specific and non-generic). The court has already held above that Michael Aram must re-articulate its description of the claimed trade dress, regardless of the effect or substance of its Response to Interrogatory. Nevertheless, because the parties focus on the Response to Interrogatory, and tie many of their more general arguments to the substance of the Response to Interrogatory, the court considers their arguments below.

Classic Touch argues that the description provided in the Response to Interrogatory is inconsistent with the one offered in the Amended Counterclaim (Classic Touch Mem. at 17-18), while Michael Aram claims that the two descriptions are consistent, but admits that the one offered in the Response to Interrogatory is narrower (Michael Aram Mem. at 16-17). The court acknowledges that the Response to Interrogatory does appear to complicate the scope of the trade

dress claimed. In Michael Aram's Response to Interrogatory, it claimed trade dress protection for goods "adorned by (1) at least one flower in bloom with rounded, semi-overlapping petals . . . ." (Resp. to Interrog. at 5.) The Amended Counterclaim alleged "one or more fully bloomed flowers or orchids . . . spaced out along the stem, each with five rounded, textured, semi-overlapping petals . . . ." (Am. Countercl. ¶ 24.) It is unclear whether Michael Aram intends to claim all blooming flowers or only blooming flowers that have five petals. Furthermore, Michael Aram's Response to Interrogatory directs Classic Touch to refer to the pictures included in Exhibit A as graphic representations of the trade dress claimed. (Resp. to Interrog. at 5.) However, on page 67 of the exhibit (which is a catalog reflecting the Black Orchid Collection), the flowers depicted, which otherwise fit the description provided in Michael Aram's response, appear to be printed and two-dimensional. (Resp. to Interrog., Ex. A (Dkt. 42-2) at 67.) It is not clear from Michael Aram's response whether it intends to also claim the two-dimensional flower print. In a later filing, Michael Aram expressly represents in a footnote that "[t]o be clear, Michael Aram's trade dress claim does not include the porcelain dinnerware products featuring 2-dimensional orchid designs shown on page 67 of the catalog." (Michael Aram Mem. at 15 n.9.) Michael Aram's representation clarifies the ambiguity regarding the type of flower representation claimed; however, an issue this central to the case ought to be expressly stated in the operative pleading.

Finally, Classic Touch argues that the Response to Interrogatory claims protection for five separate product lines—each of the four Orchid Collections (Black, White, Gold, and Golden), as well as a "family" of trade dress in the overall orchid design. (See Classic Touch Mem. at 16-17.) Michael Aram responds that the Response to Interrogatory is not a material change from the Amended Counterclaim, which defined the "Orchid collection" to include "the

Black Orchid collection, the White Orchid collection, and the Gold Orchid collection." (See

Michael Aram Mem. at 16-17; Am. Countercl. ¶ 22.) Michael Aram is correct that the Amended

Counterclaim describes three separate orchid collection colors under the umbrella of a more

general "Orchid collection." However, considering the clarity of the articulation in the Response

to Interrogatory (expressly claiming protection over four[4] separate collections featuring orchids,

as well as a fifth family of all four collections), the articulation in the Amended Counterclaim is

somewhat vague.[5] That said, nothing precludes Michael Aram from seeking trade dress

protection in this action over multiple collections of products, where each collection includes the

consistent, trade dress element Michael Aram seeks to protect. See, e.g., Rose Art Indus., Inc. v.

Swanson, 235 F.3d 165, 174-75 (3d Cir. 2000) ("If Rose Art distributed three different lines of

crayons, each line having its own distinctive packaging, and if the packaging of each line has its

own 'consistent overall look,' then the packaging of each line would constitute recognizable

trade dress . . . .").

### B. Consistency Across Product Line

Consistency across a product line is necessary for a party seeking trade dress protection

to demonstrate "that the appearance of its several products is sufficiently distinct and unique to

merit protection as a recognizable trade dress." Landscape Forms, Inc. v. Columbia Cascade

Co., 113 F.3d 373, 380 (2d. Cir. 1997). "The elements specified as the trade dress must be

present in every item in that product line; while minor variations are acceptable, the overall look

must be consistent across all items of the claimed product line." R.F.M.A.S., 619 F. Supp. 2d

at 77.

---

[4] It is unclear why the Amended Counterclaim does not include an express reference to the Golden Orchid collection. (Cf. Classic Touch Mem. at 14 n.1 (representing that "[i]mages if the Golden Orchid Collection were not readily available for reproduction").)

[5] Michael Aram can remedy this vagueness in its anticipated amendment. See infra Part V.

Classic Touch argues that Michael Aram's claimed product line is too internally inconsistent to benefit from trade dress protection. Classic Touch points to the fact that within a particular collection, such as the Black Orchid Collection, there are some product features that vary. For example, the Black Orchid Collection contains flatware spoons with embossed flowers as well as serving spoons with three-dimensional flowers, and with respect to the three-dimensional flowers, contains pieces made of differing materials that feature those flourishes. (See Classic Touch Mem. at 11-15) Classic Touch argues that these variances mean that Michael Aram's pieces within a particular Orchid Collection cannot benefit from trade dress protection as a matter of law.

This proposition would perhaps be true if Michael Aram was attempting to protect the entirety of the collections, including both embossed flowers and three-dimensional flowers, and the underlying materials that compose the tableware pieces, such as nickelplate and polished black granite. However, if Michael Aram intends to claim trade dress protection over only the three-dimensional flowers within a product line—as represented by Michael Aram in its opposition brief (see Michael Aram Mem. at 15-16)—there is no inconsistency. The elements specified as the trade dress must be present in every item in that product line; while minor variations are acceptable the overall look must be consistent across all items of the claimed product line." R.F.M.A.S., 619 F. Supp. 2d at 77 (emphases added); see also Rose Art Indus., 235 F.3d at 175 ("[W]hen determining whether the trade dress alleged by the plaintiff is recognizable, protectable trade dress, a trial court should consider only the products or packaging for which the plaintiff is seeking trade dress protection." (emphasis added)). If Michael Aram does not claim the two-dimensional, embossed flowers as trade dress, this element (which therefore would not be "specified as the trade dress" and not part of the "claimed product line")

will not be included in the "consistent overall look" analysis.  Similarly, although Michael Aram

has used broad umbrella terms to describe its product lines for marketing purposes (i.e., the

Black Orchid Collection includes certain tableware pieces that feature the claimed trade dress of

three-dimensional flowers, and other pieces that do not), nothing prevents it from only seeking

trade dress protection over those pieces that feature the consistent trade dress element.  See, e.g.,

Regal Jewelry Co. v. Kingsbridge Int'l, Inc., 999 F. Supp. 477, 480, 485 (S.D.N.Y. 1998)

(considering only the six of two hundred products in the plaintiff's collection for which the

plaintiff asserted trade dress rights, but dismissing trade dress infringement claim because

plaintiff failed to establish secondary meaning at trial).  In short, when evaluating the "consistent

overall look" of a collection of products (i.e., a "product line"), the court should not consider

products that are not at issue.  See Rose Art Indus., 235 F.3d at 175 ("We conclude that when

applying the 'consistent overall look' standard, that is, when determining whether the trade dress

alleged by the plaintiff is recognizable, protectible trade dress, a trial court should consider only

the products or packaging for which the plaintiff is seeking trade dress protection.").

In the cases on which Classic Touch relies, trade dress protection was denied due to a

lack of consistency across the actual products and actual trade dress elements that the plaintiff

sought to protect.  See, e.g., Montblanc-Simplo GmbH v. Colibri Corp., 692 F. Supp.

2d 245, 255-56 (E.D.N.Y. 2010) (adopting report and recommendation) (concluding that there

was no protectible trade dress across the line of accessories the plaintiff sought to protect due to

lack of a non-generic, distinctive element across the diverse products); Maharishi Hardy

Blechman, 292 F. Supp. 2d at 544-50 (concluding, based on the complaint, that plaintiff

attempted to protect the entire Snopants line (and not a subset thereof, the "Classic Snopants"),

and that the claimed trade dress was not consistent across the entire Snopants line); Elements/Jill

Schwartz, Inc. v. Gloriosa Co., No. 01-CV-904 (DLC), 2002 WL 1492197, at *7 (S.D.N.Y. July 15, 2002) (concluding that the plaintiff failed to present sufficient evidence for jury to find consistency across its claimed products).  These cases are distinguishable from the case at hand, assuming Michael Aram intends to protect only those pieces within the Orchid Collections that contain three-dimensional flowers.  "[I]n seeking protection for the trade dress of a line of products, the plaintiff can define the line as it sees fit . . . . In presenting a case for trade dress infringement, a plaintiff can group together any number of products in any way it sees fit, as long as the products have a consistent overall look."  Rose Art Indus., 235 F.3d at 173-74.  In other words, the collection of pieces (the "product lines") that Michael Aram seeks to protect can be defined by Michael Aram for the purposes of this action as those that contain the alleged source identifier: three-dimensional, blooming orchids on winding stems.  This narrowing of the products over which Michael Aram actually claims trade dress protection is an attempt to assure that Michael Aram does not seek to monopolize a product or "an idea, a concept, or generalized type of appearance," and is an attempt to show that "the appearance of its several products is sufficiently distinct and unique to merit protection as a recognizable trade dress."  Landscape Forms, 114 F.3d at 380 (internal quotation marks and citation omitted).

## C.    Distinctiveness

Once a product's non-functional trade dress has established distinctiveness through secondary meaning, it is subject to protection.  TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23 (2001).  Michael Aram has alleged that the traits it seeks to protect as trade dress are famous and distinctive, non-functional, and are associated in the mind of the consumer with Michael Aram as the source of the goods.  (Am. Countercl. ¶ 25; see also id. ¶ 20 ("Michael

Aram's products have developed a secondary meaning and significance in the minds of the purchasing public.").)

Classic Touch argues that Michael Aram's claimed trade dress fails to be distinctive and is generic as a matter of law. The cases on which Classic Touch relies differ significantly from the case at hand. In Montblanc-Simplo, for example, the plaintiff claimed trade dress protection over all of the goods it produced with "a grid design consisting of small rectangular areas of steel-colored edges and black background," which was too broad and generic to be protectible. 692 F. Supp. 2d at 255. Similarly, in Maharishi Hardy Blechman, the plaintiff sought protection for the look of its entire Snopants product line, which the court characterized as "all roll-up pants with elasticized cinch devices." 292 F. Supp. 2d at 550 n.12. And in National Lighting Co. v. Bridge Metals Industries, LLC, the plaintiff claimed protection in "the overall look" of its light fixtures and provided "a laundry list of the elements" such as the positioning of the fluorescent bulb, the angle at which the metal frame is curved, the method of wiring, and the fixture depth, but was unable to explain how any of these elements were distinctive rather than a mere description of a light bulb. 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009). Indeed, when the court asked the plaintiff to explain which of the claimed elements of trade dress were not common to all light fixtures, the plaintiff was unable to name any. Id. at 562 n.4.

These cases are unlike the one at hand. Here, Michael Aram seeks to protect as trade dress its three-dimensional flower designs, which, based on Michael Aram's attempted textual articulation, the photographs provided in the Amended Counterclaim, the attention garnered in the media, and the recognition received in the marketplace, appear to be distinctive, as opposed to generic as a matter of law. At least for the purposes of a motion for judgment on the pleadings

(and notwithstanding the pleading defects discussed above, see supra Part IV.A), Michael Aram has adequately alleged distinctive trade dress that has acquired secondary meaning.

## V.    AMENDMENT TO SCHEDULING ORDER AND LEAVE TO AMEND

The Scheduling Order issued in this action authorized the parties to amend the pleadings and/or add new parties through May 15, 2015.  (See Mar. 18, 2015, Min. Entry (Dkt. 19).) Although Federal Rule of Civil Procedure 15 provides that a court "should freely grant leave when justice so requires," Fed. R. Civ. P. 15(a)(2), Federal Rule of Civil Procedure 16 further provides that a pre-trial scheduling order "may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4).  See also Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (discussing the interaction between Rule 15 and Rule 16 and "holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause").  In Parker, the Second Circuit explained that good cause depends on the diligence of the moving party.  204 F.3d at 340.  In addition, the court may, in its discretion, "consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).

Classic Touch argues that Michael Aram has failed to establish good cause, and, despite taking advantage of the Scheduling Order and filing an Amended Counterclaim on May 15, 2015, failed to cure the deficiencies in its trade dress articulation or seek an extension of the time to amend by that date.  (Classic Touch Mem. at 21.)  Michael Aram argues that Classic Touch deliberately waited until May 19, 2015—four days after the deadline to amend claims, and four days after Michael Aram in fact filed an Amended Counterclaim—to express any

concern about the articulation of the trade dress claim, which Michael Aram first asserted on January 31, 2015.  (Michael Aram Mem. at 19-20.)

Here, the court finds it appropriate to amend the Scheduling Order and to grant Michael Aram leave to amend the trade dress infringement claim.  With respect to the timing of the motion to dismiss and the motion for leave to amend, neither party is without some blame.  Classic Touch waited until just after the expiration of the window in which Michael Aram could amend to raise its concerns—concerns of which it was presumably aware for months.  On the other hand, in spite of Classic Touch's concerns, Michael Aram elected to defend the Amended Counterclaim as drafted rather than seeking leave to amend upon notice from Classic Touch on May 19, 2015 or during the court's pre-motion conference.  On balance, however, the court finds that Michael Aram has not attempted to delay this litigation; it sought leave to amend roughly two months after the Scheduling Order's deadline, two months after Classic Touch first raised concerns in a brief letter, and only one month following the court's pre-motion conference concerning Classic Touch's motion to dismiss.  Cf. Henry v. County of Niagara, No. 10-CV-800 (HBS), 2011 WL 2634228, at *4 (W.D.N.Y. July 5, 2011) ("Applying the precedents within and from this Circuit cited above, two months past the Scheduling Order deadline was not an 'undue delay' under either Rule 16 or 15 to justify denying leave to amend (as well as modification of the Scheduling Order to allow for that leave).").

With respect to the substance of the claim that Michael Aram seeks to amend, as discussed above, see supra Part IV.A, the deficiencies in the pleading of the trade dress infringement claim are more of a technical issue than a fatal defect.  In the court's view, there is a considerable lack of clarity in the case law addressing the adequate pleading formulation of trade dress claims such as Michael Aram's; in other words, it was reasonable for Michael Aram

to defend the Amended Counterclaim as drafted rather than immediately seek leave to amend.[6]

Before Classic Touch made its concerns known (after the deadline by which Michael Aram could amend), it was reasonable for Michael Aram to assume that the articulation was adequate and that the case would proceed through fact discovery to summary judgment practice and/or trial without a challenge by Classic Touch to Michael Aram's claims based on the legal adequacy of the allegations.[7]  At this relatively early stage of the litigation, it would be an unjust result to dismiss without an opportunity to amend this particular trade dress infringement claim based on what could be characterized as a pleading technicality.

Finally, Classic Touch has failed to show that it would be prejudiced by the amendment of the Scheduling Order, particularly where the parties have proceeded with discovery on all claims, including the trade dress infringement claim, during the pendency of this partial motion to dismiss.  (See June 25, 2015, Min. Entry.)  The court recognizes that "lack of prejudice alone is typically insufficient to demonstrate 'good cause' under Rule 16," Point 4 Corp. v. Tri-State Surgical Supply & Equip., Ltd., No. 11-CV-726 (CBA) (RLM), 2012 WL 3306612, at *4 (E.D.N.Y. Aug. 13, 2012) (adopting report and recommendation); see also Gullo v. City of New York, 540 F. App'x 45, 47 (2d Cir. 2013) (summary order), but lack of prejudice certainly is relevant to the court's inquiry.  Here, the parties are have engaged in (and are still engaged in) discovery, and the proposed amendment would neither add new causes of action or legal theories, nor delay later dispositive motion practice or a potential trial.

---

[6]  For this reason, as well as the reasons discussed above, see supra Part VI, the court also rejects Classic Touch's argument that amendment of the trade dress infringement claim would be futile.

[7]  This was not an action in which Classic Touch filed a motion to dismiss for failure to state a claim under Rule 12(b)(6).

## VI.    CONCLUSION

There is no doubt that Michael Aram's tableware pieces featuring three-dimensional, blooming orchids are the type of goods for which trade dress protection may be available. However, Michael Aram's articulation of the trade dress as it is currently stated in the Amended Counterclaim is impermissibly vague and fails to provide proper notice to Classic Touch and to the court as to the scope of the trade dress claimed.  Accordingly, as alleged, Michael Aram's trade dress infringement claim is DISMISSED WITHOUT PREJUDICE.  In addition, the court amends the Scheduling Order and GRANTS Michael Aram leave to amend its allegations pertaining to the trade dress infringement claim; Michael Aram shall file a Second Amended Counterclaim, if any, within fourteen (14) days of the date of entry of this Memorandum and Order.

SO ORDERED.

/s/ Nicholas G. Garaufis

Dated: Brooklyn, New York
        October 23, 2015

NICHOLAS G. GARAUFIS
United States District Judge